Marca Ouida
P.O. Box 111
Charlton Heights, West Virginia 25040
Marca.Ouida@outlook.com
Plaintiff, *Sui Juris*



FILED _____ LODGED
_____ RECEIVED

APR 24 2023

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
THE TACOMA DIVISION

| | |
|---|---|
| MARCA OUIDA, <br><br> Plaintiff, <br><br> v. <br><br> HARBORS HOME HEALTH AND HOSPICE, DARLENE GREENAWALT, CHIEF EXECUTIVE OFFICER, MELISSA DHOOGHE, HUMAN RESOURCES DIRECTOR, and DR. JULIETTE ERICKSON, MD., MEDICAL DIRECTOR, <br><br> Defendants. | CASE NO. 3:23-CV-05356 BHS <br><br> PLAINTIFF'S COMPLAINT FOR EMPLOYMENT DISCRIMINATION <br><br> JURY TRIAL DEMANDED |

**PLAINTIFF'S COMPLAINT FOR EMPLOYMENT DISCRIMINATION**

Plaintiff, MARCA OUIDA (hereinafter referred to as "Plaintiff" or "Ouida"), files this Complaint against Defendant, HARBORS HOME HEALTH AND HOSPICE (hereinafter referred to as "Defendant" or "Harbors"), and alleges as follows:

## I.  PARTIES

1.  Plaintiff, MARCA OUIDA, was a citizen and resident of Grays Harbor County Washington at all times material to this lawsuit, and currently, Plaintiff is a citizen and resident of Fayette County, West Virginia.  Plaintiff's mailing address is P.O. Box 111 Charlton Heights, West Virginia 25040.

1

2. Upon information and belief, Defendant, HARBORS HOME HEALTH AND HOSPICE (herein "Harbors"), is a Federal State Agency and conducts business in Grays Harbor County, located at 201 7th Street, Hoquiam, Washington 98550.

3. Defendant, DARLENE GREENAWALT (hereinafter referred to as "Greenawalt", is a citizen of the United States residing in the State of Washington and is employed in her official capacity as Chief Executive Officer at Harbors Home Health and Hospice, located at 201 7th Street, Hoquiam, Washington 98550.

4. Defendant, MELISSA DHOOGHE (hereinafter referred to as "Dhooghe"), is a citizen of the United States, residing in Grays Harbor County, Washington State, and is employed in her official capacity as Human Resources Director at Harbors Home Health and Hospice, located at 201 7th Street, Hoquiam, Washington 98550.

5. Defendant, DR. JULIETTE ERICKSON, MD, (hereinafter referred to as "Dr. Erickson," is a citizen of the United States, residing in Thurston County, Washington State, and serves as Medical Director at Harbors Home Health and Hospice, located at 201 7th Street, Hoquiam, Washington 98550. Defendant's mailing address is 4618 Village Court SE, Olympia, Washington 98501.

## II. JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter in this action pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

7. Venue properly lies in the United States District Court for the Western District of Washington, Tacoma Division, as Defendant conducts its business in Grays Harbor County and Pacific County.

2

### III.    INTRODUCTION

8.    Plaintiff was an employee of Defendant, Harbors, from February 10, 2015, through August 31, 2021.

9.    In August 2021, Defendant, Harbors, mandated that all of its employees get vaccinated by Covid-19 vaccine or face termination in an all-staff meeting held on August 20, 2021.

10.    Plaintiff requested denial of taking the vaccine and/or PCR test due to religious reasons and requested that she should be accommodated on a religious basis. However, Defendant denied the request of Plaintiff.

11.    Defendant, Harbors, kept an open spreadsheet of every employee's private health information recording their body temperature and any symptoms on a daily basis.

12.    Defendant, Harbors, illegally terminated Plaintiff on August 31, 2021, via a phone call while Plaintiff was on a vacation from August 18, 2021, to September 7, 2021.

13.    Defendant, Harbors, did not pay Plaintiff after August 31, 2021, and denied Plaintiff legal payment of 100 hours of accrued vacation and/or sick leave amounting to $3,700.00.

14.    Plaintiff approached U.S. Equal Employment Opportunity Commission and alleged Discrimination and Retaliation on part of the Defendant. The Commission determined not to pursue a further investigation on Plaintiff's Complaint and issued a Right to Sue Letter dated January 26, 2023.

15.    Plaintiff attempted to reasonably settle the matter outside of a Court setting by sending a Notice of Intent to File Suit, a Courtesy Notice, a Default Notice, and a Notice of Estoppel, prior to initiating a lawsuit against the Defendants.

*(A Copy of "Affidavit of Demand for Redress of Constitutional and Civil Rights Violations [Demand to Show Clean Hands and Federal Partnerships] [Notice of Intent to File Suit]" is attached herein as **Exhibit A**)*

*(A Copy of the "Courtesy Notice" is attached herein as **Exhibit B**)*

*(A Copy of the "Notice of Default" is attached herein as **Exhibit C**)*

*(A Copy of the "Notice of Estoppel" is attached herein as **Exhibit D**)*

## STATEMENTS OF FACTS

16. Plaintiff, Marca Ouida, is a woman created by God and is one of the People protected by the Constitution of the United States of America and Washington State.

17. Plaintiff's home was located in Hoquiam, Washington, Grays Harbor County in the United States of America with an address of 111 27th St, Hoquiam, Washington, 98550.

18. Plaintiff worked for Harbors Home Health and Hospice from 2/10/2015 until 08/31/2021

19. Harbors Home Health and Hospice is a corporation in the State of Washington.

20. Harbors Home Health and Hospice is located at 201 7th St, Hoquiam, Washington, 98550.

21. Harbors Home Health and Hospice was initially created as a corporation by the State of Washington, to serve the public on April 17, 1981, with the original name Harbors Home Health Services.

22. Harbors Home Health and Hospice has a current business license to conduct public business, UBI # 600 437 574.

23. Harbors Home Health and Hospice is a 501(c)(3) Corporation, operated by a Board of Directors.

4

24. Harbors Home Health and Hospice is certified by the Centers for Medicare & Medicaid Services as a Home Health and Hospice Agency with CMS certification #501525.

25. Plaintiff worked at Harbors Home and Hospice primarily as a Physical Therapist Assistant.

26. Plaintiff worked at Harbors Home Health and Hospice also as a Telehealth Coordinator and in a less-defined role within the intake dept and rehab staff scheduling department.

27. On or about March 16, 2020, Fifteen Days to Slow the Spread was announced and began shortly thereafter.

28. On or about March 16, 2020, and the announcement to Slow the Spread in 2020, Harbors Home Health and Hospice began temperature checking and symptom reporting.

29. At this time, Plaintiff was working in the office in a support role for Intake when each day, the Administrative Assistant, Carolyn Duckworth, (not a licensed or certified healthcare worker) would come to each employee's desk and use the forehead thermometer to take temperatures and ask survey questions.

30. The Administrative Assistant, Carolyn Duckworth, would write all the data down on a clipboard and then enter this data into a spreadsheet.

31. The Administrative Assistant, Carolyn Duckworth, would occasionally comment on her perception of what a high or low temperature was.

32. Plaintiff felt extremely uncomfortable with an untrained employee, Carolyn Duckworth, collecting Plaintiff's private health data and subsequently being subjected to Carolyn Duckworth's comments regarding whether the temperature was high or low, in her opinion.

33. The data gathered from the temperature taking and symptom reporting from each employee was placed on a spreadsheet listing all of their names with their daily private health information.

34. All employees who called in sick during this time had their symptoms logged into a separate spreadsheet from the daily call-in sheet. Their names and results of any test, temperature, drainage, and other symptoms were recorded in the aforementioned spreadsheet.

35. The two above-mentioned spreadsheets were accessible by all employees who used and or had access to the office computers from approximately February or March 2020 until Plaintiff's termination in late August 2021.

36. On January 4, 2021, Plaintiff received an all-clinical staff Tiger Text from Cheryl Conklin, RN, inquiring to all clinical staff if they had or if they were planning on getting the Covid-19 mRNA vaccination.

37. On January 4, 2021, multiple employees began answering the text as to whether or not they were getting the COVID-19 mRNA vaccine.

38. On January 4, 2021, the Tiger Text sent by Cheryl Conklin, RN, caused me to pull over from Plaintiff's driving, as it presented a safety hazard while driving.

39. On January 4, 2021, the question of the COVID-19 mRNA vaccine status violated Plaintiff's right to privacy.

40. On January 4, 2021, as opposed to directly communicating with each Employee individually in regard to their medical decisions, Cheryl Conklin's decision to send a group message via Tiger Text violated Plaintiff's right to medical privacy. Plaintiff was entitled to privacy in regard to her personal medical decisions and choices.

6

41. On January 4, 2021, Plaintiff replied to Cheryl Conklin's group inquiry soliciting each Employee's vaccine status by requesting that the group cease and desist sending further messages including their private health information. Thus, Plaintiff publicly objected to the group text message. However, members of the group chat continued to share their private medical information despite Plaintiff's request to cease and desist from doing so.

42. On January 4, 2021, Cheryl Conklin showed a blatant lack of regard for Plaintiff's safety while driving due to the volume of incoming texts responding to Cheryl Conklin's group inquiry.

43. On August 17, 2021, Plaintiff received a phone call from Defendant, Greenawalt, asking whether or not Plaintiff had been vaccinated for Covid-19, violating Plaintiff's right to medical privacy. Plaintiff declined to answer due to the fact that her inquiry was in regard to Plaintiff's personal, private health information.

44. On August 18, 2021, Plaintiff's vacation began.

45. On August 20, 2021, Harbors had an all-staff meeting. Plaintiff attended the August 20, 2021 meeting via telephone conferencing.

46. In this August 20, 2021 meeting, Defendant, Greenawalt, presented the decision made by the Harbors Home Health and Hospice Board of Directors and the administrative staff to follow Governor Inslee's August 9, 2021, Proclamation requiring all staff must be vaccinated.

47. In the meeting on August 20, 2021, Defendant, Greenawalt, stated that all Harbors Staff must be vaccinated, as per the Harbors Board of Directors. Defendant, Greenawalt, stated that the decision was made as a direct result of Dr. Erickson's input and influence.

7

48. Defendant, Dr. Erickson, would not allow those who were unvaccinated with the COVID-19 mRNA non-FDA approved to continue working in her office. Subsequently, Harbor's adopted the same mentality and changed its policy.

49. In this August 20, 2021 meeting, Defendant, Greenawalt, provided a timeline in which all employees must begin the two (02) step process of getting vaccinated with the non-FDA approved COVID-19 vaccine to be considered fully vaccinated. This timeline was consistent with Governor Inslee's mandate and implementation date.

50. In this August 20, 2021 meeting, Defendant Greenawalt, stated that only a medical exemption signed by a physician or a Harbors Specific Religious Exemption and Accommodation Form would be accepted and asked Defendant, Melissa Dhooghe, for the Form.

51. In this August 20, 2021 meeting, Defendant, Greenawalt, stated that in the event that a Harbors Specific Religious Exemption and Accommodation Form be submitted, Harbor's appointed Attorney, whose identity was never disclosed, was the sole decision maker in deciding whether or not to grant or deny the Harbors Specific Religious Exemption and Accommodation Form.

52. In this August 20, 2021 meeting, Defendant, Greenawalt, stated she expected the current vaccines to receive FDA approval soon.

53. In this August 20, 2021 meeting, Defendant, Greenawalt stated that she expected the OSHA ruling to be in favor to have all healthcare workers vaccinated with the Covid-19 vaccination.

54. In this August 20, 2021 meeting, Defendant, Greenawalt stated she expected CMS to rule in favor to have all healthcare workers vaccinated with the Covid-19 vaccination.

55. On August 31, 2021, Defendant, Greenawalt, and Defendant, Dhooghe, contacted Plaintiff while she was on day 14 of her vacation to inquire as to Plaintiff's vaccination status.

56. On the above-mentioned call, Defendants Greenawalt and Dhooghe demanded that Plaintiff get PCR tested for COVID-19 prior to her return to the office.

57. On the above-mentioned call, they reiterated that all Harbor employees must have the Covid vaccination, or in lieu of the vaccination, a medical exemption, a religious exemption, or in lieu of the two exemptions, a weekly PCR test.

58. Plaintiff stated that she was Christian and that the vaccination and the PCR test were against her religious beliefs. The accommodation Plaintiff requested was that Harbors accommodate Plaintiff's work, as they already had for the prior 18 months.

59. On the above-mentioned phone call, Plaintiff requested the Harbor's specific Religious Exemption Form to be sent via email due to the fact that Plaintiff was out of town in Arizona on vacation.

60. Ultimately, Defendant, Greenawalt, and Defendant, Dhooghe, were unwilling to send the Harbors Specific Religious Exemption and Accommodation Form to Plaintiff by way of an email. Rather, they stated that Plaintiff must pick up the Form in person at the office. Plaintiff was not provided a reason as to why they were unwilling to send the Form electronically by email.

61. In doing so, Harbors constructed an obstacle by requiring Plaintiff to take a PCR test before allowing Plaintiff to come to the office to obtain the Harbors Specific Religious Exemption and Accommodation Form or to return to work. However, prior to this, Plaintiff had already objected to the PCR test, as per her religious accommodation need.

9

## CAUSES OF ACTION
## FIRST CAUSE OF ACTION
### (Termination of Employment Based on Religious Discrimination)

62.   The allegations contained in paragraphs 1 through 61 are realleged and incorporated herein as if fully set forth.

63.   All the employees of Defendant, Harbors, were given the no vaccine, no job ultimatum. Plaintiff requested denial of taking the vaccine due to religious reasons and requested that she should be accommodated on a religious basis. However, Defendant denied the request of Plaintiff resulting in the termination of Plaintiff on August 31, 2021.

64.   Title VII of the Civil Rights Act of 1964 protects employees and job applicants from discrimination based on religion. Title VII also requires employers to reasonably accommodate the religious practices of an employee or a prospective employee, unless doing so would create an "undue hardship" on the employer. Harbors had previously accommodated all employees throughout the pandemic regardless of religious affiliation without having a Vaccine or PCR Test in the prior 18 months.

65.   Religious discrimination is defined as treating individuals differently because of their religious beliefs and practices, and/or their request for accommodations of their religious beliefs and practices. Religious Discrimination also includes treating individuals differently because of their lack of religious beliefs or practices.

66.   Religious practices are not just those required by a church or other religious group but include moral or ethical beliefs as to what is right and wrong that are sincerely held with the strength of traditional religious views.

67.   Defendants were aware that Plaintiff opposed the still non-FDA approved vaccine and PCR testing mandates due to Plaintiff's religious, moral and ethical beliefs.

10

68. Beliefs may be "religious" in nature even if no religious group holds such beliefs or religious groups to which others in the workplace belong do not accept such beliefs.

69. It is illegal to discriminate based on religion in any aspect of employment, including hiring, firing, compensation, assignment, and classification of employees. Harassment based on religion is also prohibited.

70. The law also prohibits harassment or any other employment action based on any of the following: (i) Affiliation: An individual's affiliation with a particular religious group. For example, harassing an individual because she practices Buddhism; (ii) Characteristics: Characteristics, such as dress, associated with a particular religion. For example, harassing someone wearing a yarmulke or a woman wearing a hijab (a body covering and/or head scarf worn by some Muslims); (iii) Perception: Harassing or otherwise discriminating because of the perception or belief that a person is a member of a particular religious group whether or not that perception is correct. For example, firing a Sikh for wearing a turban because the supervisor thought he was Muslim; and (iv) Association: Harassing or otherwise discriminating because of an individual's association with a person or organization of a particular religion. For example, giving an employee fewer desirable assignments because her husband is Catholic, or refusing to promote an employee because he attends a particular church.

71. Title VII also forbids retaliation against a person because he or she has opposed unlawful religious discrimination or participated in the complaint process by filing a claim, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII.

72. Title VII requires employers to reasonably accommodate the religious practices of an employee or prospective employee unless doing so would create an undue hardship upon the employer.

73. A reasonable accommodation is a change in a workplace rule or policy. Some examples are flexible scheduling, voluntary substitutions or swaps, job reassignments, and lateral transfers.

74. In addition, employers may not schedule examinations or other selection activities in conflict with a prospective employee's religious needs, inquire about an applicant's future availability at certain times, maintain a restrictive dress code, or refuse to allow observance of a Sabbath or religious holiday, unless the employer can prove that not doing so would cause an undue hardship.

75. Generally, when workers articulate a need for an accommodation of their religious beliefs or practices in the workplace, the employer is required to accommodate them. However, employers are not required to make accommodations that would cause them undue hardship.

76. Plaintiff's request that Defendants, Greenawalt and Dhooghe, send the Harbors Specific Religious Exemption and Accommodation Form by email did not impose an undue hardship upon Defendant, Harbors.

77. However, Defendant, Habors, unwillingness to send the Harbors Specific Religious Exemption and Accommodation Form by email to Plaintiff caused Plaintiff emotional harm and ultimately loss of employment due to the fact that Plaintiff had to choose between violating her religious beliefs and conscience or losing her job. Defendant, Harbors, effectively created an unsolvable dilemma for Plaintiff because prior to coming to the office, Defendant, Dhooghe, demanded that Plaintiff take the PCR test, which violated Plaintiff's

12

religious conscience. Thus, it was an impossibility for Plaintiff to receive the Form without violating her religious beliefs due to Harbor's unwillingness to accommodate Plaintiff's request to receive the Form electronically.

78. Defendants did not provide a reason as to why they were unwilling to send the Harbors Required Religious Exemption and Accommodation Form to Plaintiff by email.

79. Generally, an accommodation that would require more than the minimal cost to the employer, considering its size and resources, is considered an undue hardship in the context of accommodating religious beliefs and practices. Undue hardship also may be shown if changing a bona fide seniority system to accommodate one employee's religious practices denies another employee the job or shift preference guaranteed by the seniority system.

80. As per *Baltgalvis v. Newport News Shipbuilding Inc.*, 132 F. Supp. 2d 414, 417: *"Title VII provides in pertinent part that "it shall be an unlawful employment practice for an employer -- (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion . . . ." 42 U.S.C. § 2000e-2(a)(1). "Religion" includes "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." Id. § 2000e(j). Courts have recognized that employees may utilize two theories in asserting religious discrimination claims. These theories are termed the "disparate treatment" and "failure to accommodate" theories. See Chalmers v. Tulon Co. of Richmond, 101 F.3d 1012, 1017 (4th Cir.), cert. denied, 522 U.S. 813, 139 L. Ed. 2d 21, 118 S. Ct. 58 (1996). In a religious accommodation case, the category into which the*

13

*instant case falls, an employee may establish a claim even though she is unable to (1) demonstrate that other employees were treated more favorably or (2) rebut an employer's legitimate, nondiscriminatory reason for her discharge. This is because, as the "failure to accommodate" theory recognizes, an employer must, to an extent short of undue hardship, actively attempt to accommodate an employee's religious beliefs, expression, or conduct even if, absent the religious motivation, the employee's behavior would supply a legitimate ground for discharge.*

81.  To establish a prima facie religious accommodation claim, Plaintiff must establish that (1) she has a bona fide religious belief that conflicts with an employment requirement; (2) she informed Defendant of this belief, and (3) she was disciplined for failure to comply with the conflicting employment requirement. See *Chalmers v. Tulon Co.*, 101 F.3d 1012.

82.  In this case, Plaintiff could not get vaccinated or have the PCR test due to her religious beliefs and communicated the same to Defendant while requesting accommodation. Defendant denied the request of Plaintiff and retaliated by terminating the employment of Plaintiff on August 31, 2021. Defendant did not pay Plaintiff after August 31, 2021, and denied legal payment of 100 hours of accrued vacation and sick leave amounting to approximately $3,700.00.

83.  Defendant's unlawful termination of Plaintiff based on religious discrimination entitles Plaintiff to compensation for loss of income, including actual and future loss of wages due to diminished capacity, and damages for emotional distress.

## SECOND CAUSE OF ACTION
### (Violation of First Amendment Right)

84.  The allegations contained in paragraphs 1 through 83 are realleged and incorporated therein as if fully set.

14

85. Allegations contained in paragraphs 16 through 61 above constitute a violation of the fundamental First Amendment Right of Plaintiff. *"The elements of a First Amendment retaliation claim are dependent on the factual context of the case. In order to establish a First Amendment retaliation claim, a plaintiff must demonstrate: (1) he has an interest protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right."* (See *Searle v. Red Creek Cent. Sch. Dist.,* 2021 U.S. Dist. LEXIS 211259).

### THIRD CAUSE OF ACTION
### (Breach of Duty of Care and Negligence)

86. The allegations contained in paragraphs 1 through 85 are realleged and incorporated herein as if fully set.

87. Pursuant to RCW 5.40.050, the allegations contained above constitute a breach of duty of care by Defendants for the failure of Defendants to appeal to Governor Jay Inslee regarding accommodation against the mandate of getting employees vaccinated with the non-FDA approved Covid-19 mRNA vaccine. Defendants owed a duty of care to their employees. Defendants breached their duty of care to their employees in their decision to abide by the unlawful order presented in the proclamation by Governor Inslee.

88. Negligence is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the case, or doing what such a person would not have done. Negligence, in law, is a breach of duty unintentionally and proximately producing injury to another possessing equal rights. If limited to actionable negligence, this definition is correct; but an act may be negligent without being the proximate cause of an injury, and hence not actionable.

89.    *"The definition of negligence has become commonplace in the law that negligence is a failure to do what a reasonably prudent person would ordinarily have done under the circumstances or the situation, or doing what such a person under existing circumstances would not have done." Baltimore & P.R. Co. v. Jones,* 95 U.S. 439, 24 L.Ed. 506.

## FOURTH CAUSE OF ACTION
### (Willful Misconduct)

90.    The allegations contained in paragraphs 1 through 89 are realleged and incorporated herein as if fully set.

91.    Pursuant to RCW 77.15.098, Defendants are liable for willful misconduct due to the fact that Defendants demonstrated a reckless disregard for Plaintiff's liberty rights to secure safety by demanding that their employees be administered with the non-FDA approved COVID-19 mRNA vaccine while having full knowledge of the harm it could cause.

92.    In the Spring of 2021, Defendant, Dhooghe, informed Plaintiff of her "near death" experience that occurred within hours of being administered her first dose of the mRNA vaccine. Defendant, Dhooghe, stated that had her husband not come home for lunch, she would have died as a result of post-vaccination seizures. In the same conversation, Defendant, Dhooghe, stated that her Emergency Room Physician recognized her seizures as post-vaccination related.

93.    Willful misconduct is defined as something different from and more than negligence, however gross. The mere failure to perform a statutory duty is not alone willful misconduct. Willful misconduct has been defined as meaning intentional, wrongful conduct done either with the knowledge that serious injury probably will result or with a wanton and reckless disregard for the possible result. Three elements are necessary to raise a negligent act to the level of willful misconduct: actual or constructive knowledge of the peril to be

16

apprehended; actual or constructive knowledge that injury is probable as opposed to a possible result of the danger; and a conscious failure to act to avert that peril. Ordinarily, whether an action constitutes willful misconduct is a question of fact.

94.    As per *Berkley v. Dowds*, 152 Cal. App. 4th 518, 519: *"An act or omission must be specifically described in order to raise it to the level of willful misconduct. No claim of willful misconduct can be stated without alleging the specific act or omission that caused the injury. Three essential elements must be present to raise a negligent act to the level of willful misconduct: (1) actual or constructive knowledge of the peril to be apprehended, (2) actual or constructive knowledge that injury is a probable, as opposed to a possible, result of the danger, and (3) conscious failure to act to avoid the peril."*

## FIFTH CAUSE OF ACTION
### (False Imprisonment)

95.    The allegations contained in paragraphs 1 through 94 are realleged and incorporated herein as if fully set.

96.    A rather complete description of what does and does not constitute false imprisonment was given by the Supreme Court of Kansas, *Cordell v. Standard Oil Co.*, 131 Kan. 221, 289 P. 472, 473 (1930); as follows:

*"False imprisonment is necessarily a wrongful interference with the personal liberty of an individual. The wrong may be committed by words alone or by acts alone, or by both, and by merely operating on the will of the individual, or by personal violence, or by both. It is not necessary that the individual be confined within a prison or within walls, or that he be assaulted or even touched. It is not necessary that there should be any injury done to the individual's person or to his character or reputation; nor is it necessary that the wrongful act be committed with malice or ill will, or even with the slightest wrongful*

17

*intention; nor is it necessary that the act is under color of any legal or judicial proceeding. All that is necessary is that the individual be restrained of his liberty without any sufficient legal cause therefor, and by bywords or acts which he fears to disregard. False imprisonment exists not only by words or acts that one fears disregarding but also by such acts and measures that one cannot disregard."*

No fear of disobedience needs to exist. If someone causes a situation that makes it impossible for another to exercise their liberty or locomotion, it is false imprisonment. False imprisonment is the name of the category for torts that unlawfully deprive or interfere with the liberty of a person. Defendants violated Plaintiff's liberty when they placed a demand limiting Plaintiff's entry into the office to return to work.

97. Based on the statements of facts and pursuant to RCW 9a.40.040, Plaintiff was subjected to false imprisonment at the hands of the Defendants.

## SIXTH CAUSE OF ACTION
### (Violation of the Fourth Amendment)

98. The allegations contained in paragraphs 1 through 97 are realleged and incorporated herein as if fully set.

99. The Fourth Amendment of the Constitution of the United States of America and Article 4, Section 6 of the Washington State Constitution, protect people from unreasonable searches and seizures by any person or entity acting under the color of law and/or as a de facto Agent of the United States or Washington State. A search or seizure is illegal under the Fourth Amendment if it happens without consent, a warrant, or probable cause to believe a crime has been committed.

100. The act of obtaining body fluid is associated with a crime. Due to the fact that returning from a vacation is not a crime, nor is having a normal body temperature, nor any

18

other adverse symptom, Defendants' order to force Defendant to submit to a search of her bodily fluids was unlawful. Therefore, Defendant's order that Plaintiff submits to a PCR test in order to continue being employed constitutes an unlawful search and seizure.

101. Guidance by the CDC, other public health entities, or a proclamation by a governor is not law.

## SEVENTH CAUSE OF ACTION
### (Breach of Contract)

102. The allegations contained in paragraphs 1 through 101 are realleged and incorporated herein as if fully set.

103. In Washington State, a Breach of Contract occurs when one party violates one of the terms of the Agreement. Under Washington State law, this refers to any situation in which one party entered into a contract fails to fulfill its provisions. A Breach of Contract can lead to material losses. If one party is guilty of a breach, the other party can hold that party financially responsible for the related damages as a result of the breach.

104. Defendants committed a Breach of Contract on August 20, 2021, by demanding that Plaintiff and all Employees must be vaccinated in order to continue employment at Harbors. Defendant reiterated their new terms of employment to Plaintiff on August 31, 2021, when Defendant gave Plaintiff an ultimatum to choose between staying employed or being injected with the non-FDA-approved COVID-19 vaccine or PCR tested weekly in lieu of a medical or religious exemption and accommodation.

105. The Defendants' new terms of employment were unlawful. Harbors enforced their policy change ahead of the Centers for Medicare & Medicaid Services Mandate whose mandate went into effect on November 5, 2021. Judge Terry Doughty of the United States District Court for the Western District of Louisiana issued a decision in favor of a nationwide

19

Preliminary Injunction, stating as follows: "There is no question that mandating a vaccine to 10.3 million healthcare workers is something that should be done by Congress, not a government agency." A Government Agency includes the office of the Governor in all states.

106. Based on the foregoing, Defendant's conduct constitutes a material breach of contract with Plaintiff regarding employment.

## EIGHTH CAUSE OF ACTION
### (Civil Conspiracy)

107.     The allegations contained in paragraphs 1 through 106 are realleged and incorporated herein as if fully set.

108.     Pursuant to 42 U.S. Code Section 1983, Civil Action for Deprivation of Rights, every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

109.     Pursuant to 42 U.S. Code Section 1985, Conspiracy to Interfere with Civil Rights, if two or more persons in any State or Territory conspire…for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or

20

deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

110.	Pursuant to 42 U.S. Code Section 1988, Proceedings in Vindication of Civil Rights, The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of titles 13, 24, and 70 of the Revised Statutes for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty.

111.	The evidence that supports that Defendants violated Plaintiff's Constitutional and Civil Rights lies within the Affidavits attached herein as *Exhibits A-D.*

112.	Pursuant to Carmine vs. Bowen, 64A, 932(1906), "One's silence may invoke the Doctrine of Estoppel by Acquiescence." Defendants' failed to specify in a document, sworn under penalty of perjury, the exact Constitutional Authority they used to demand Plaintiff to take a non-FDA approved COVID-19 mRNA and/or PCR test as a requirement before coming to work. Additionally, Defendants failed to rebut the claims

21

asserted in Plaintiff's Affidavits, which is Tacit Silence, Tacit Agreement, and Acquiescence, proving Plaintiff's claims are true.

113.    Based on the foregoing, Harbors Home Health and Hospice conspired to deprive Plaintiff of Constitutional and Civil Rights.

*(A Copy of "Affidavit of Demand for Redress of Constitutional and Civil Rights Violations [Demand to Show Clean Hands and Federal Partnerships] [Notice of Intent to File Suit"] is attached herein as **Exhibit A)***

*(A Copy of the "Courtesy Notice" is attached herein as **Exhibit B)***

*(A Copy of the "Notice of Default" is attached herein as **Exhibit C)***

*(A Copy of the "Notice of Estoppel" is attached herein as **Exhibit D)***

### PRAYER FOR RELIEF

Wherefore, Plaintiff prays for relief as follows:

1. Damages, including general and special damages, in an amount to be determined at trial.

2. Punitive damages.

3. Compensation for lost income from termination.

4. Prejudgment Interest.

5. Costs to the extent provided for by the law, including attorney's fees as provided by the statute.

6. An order awarding Plaintiff such other and further relief as the Court deems just and proper.

7. The Court orders Harbors to abide by the Constitution of the United States of America.                                   Respectfully Submitted By:

/s/ Marca Ouida
Marca Ouida
P.O. Box 111
Charlton Heights
West Virginia 25040
Marca.Ouida@outlook.com
Plaintiff, *Sui Juris*

22

## DEMAND FOR JURY TRIAL

Plaintiff, Marca Ouida, demands a jury trial of all triable issues.

/s/ Marca Ouida
Marca Ouida
P.O. Box 111
Charlton Height, West Virginia 25040
Marca.Ouida@outlook.com
Plaintiff, *Sui Juris*

23

# EXHIBITS

7J: ;4;F3

From:  Marca Ouida                      To: Medical Director, Juliette Erickson, MD
       17209 N. 66th Avenue             To: Board President, Norm Sprague
       Glendale, Arizona 85308          To: Human Resource Director, Melissa Dhooghe
                                        To: Chief Executive Officer, Darlene Greenawalt

To:  Harbors Home Health and Hospice
     201 7th Street
     Hoquiam. WA 98550

\*CMS Certification Number: 501525

## Affidavit of Demand for Redress of Constitutional and Civil Rights Violations
### [Demand to Show Clean Hands and Federal Partnerships]
### [Notice of Intent to File Suit]

### Notice to Agent is Notice to Principal and Notice to Principal is Notice to Agent

Comes now Affiant, **Marca Ouida**, (one of the People as found in the <u>Arizona State Constitution,</u> <u>Article II, Section 2: Political Power, Purpose of Government,</u> and the <u>U.S. Constitution Article</u> <u>IV, Section 2: Citizens in one State May Exercise Equal Privileges in Every State</u>), Sui Juris, in this Court of Record, giving you Notice of the following claims and facts that you and your agents may provide due care;

Please take Notice from Affiant, Harbors Home Health and Hospice is identified as a 501(c)(3) Corporation, operated by a Board of Directors. In this case, Harbors Home Health and Hospice, its owners, operators, administrators, and the following individuals are being held jointly and individually responsible for both Constitutional and Civil Rights injuries suffered by Affiant. These individuals are: the Board President, Norm Sprague, Chief Executive Officer, Darlene Greenawalt, Human Resource Director, Melissa Dhooghe, and Medical Director, Juliette Erickson, MD.

Affiant gives Notice, Constitutional Rights may not be suspended during National Emergencies and that Constitutional Rights have the highest standing in all courts of record. This Board of Directors, its officers, managers and other decision makers violated Affiant's and the "Peoples'" Constitutional Rights as well as Civil Rights by the following: 1) requiring a medical procedure prior to resuming Affiant's workload after an absence, while not also requiring that same procedure for all other returning employees, (Discrimination, with high risk of ADA, and GINA federal law violations due to invasive medical procedures); 2) creating and implementing illegal and unlawful policies requiring an experimental medical procedure as a qualification for continuing employment, (Constitutional violation and high risk of federal HIPAA and EEOC violations); 3) requiring private medical information as proof of compliance with this policy, or medical exemption, (Constitutional Right violation and HIPAA violation); 4) requiring religious exemption form submission in lieu of proof of vaccination status, (Intrusive Constitutional Religious Freedom violations and "substantive due process violation" r/t issues of safety and privacy); and further 5) coercing Affiant to officially resign in order to prevent the risk of a charge of "Patient Abandonment" against Affiant's license; a risk caused by company position preventing patient care services from resuming until Affiant complied with the verbal mandate. See Constitutional provisions relative to this issue:

**Constitution of the State of Washington, Article I, Declaration of Rights, Section 12:**
"No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens or corporations." [Emphasis Added by Highlight]

**Federal Food and Drug and Cosmetic Administration, Title 21, §360-bbb-3(e)(1)(A)(ii)(III):**
"Employers are required to inform employees: (III) of the option to accept or refuse administration of the product and of the consequences, if any, of refusing administration of the product and of the alternatives to the product that are available and of their benefits and risks."

**Color of Law**
"The appearance or semblance, without substance, of legal right. Misuse of power, possessed by virtue of state law, and made possible only because wrongdoer is clothed with authority of state, is action taken under "color of law." (Black's Law Dictionary 5th Edition)

Affiant gives specific Notice, that the timeline of August 17, 2021 (the date of first request for mRNA vax status) through August 31, 2021, represents the period of coercion during which the ultimatum finally occurred requiring the invasive testing medical procedure prior to returning to work following a vacation. All of these company mandates preceded the Presidential Executive Orders, 14042 and 14043 under which OSHA regulation changes, and CMS manipulation of federal regulations occurred in an attempt to force the Nation into compliance with President Biden's demands of the "People." Governor Inslee's edicts were not authorized under the National Emergency Act because they violated the "Peoples'" Constitutional Rights. This opinion is supported by the Supreme Court and Appellate Alert, issued on March 23, 2020 that is cited below as guidance to all government branches. Time limitations do not apply to criminal conduct which in this case includes both Constitutional and Civil right violations.

**TITLE 18, U.S.C., SECTION 242:** "Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States. . . if such acts include the use, attempted use, or threatened use of a dangerous weapon, . . . shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include . . . an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death."

Take careful Notice, Affiant informs respondents that Governor Inslee's reliance on an opinion, issued by the Office of Legal Counsel from the Federal Justice Department on July 6, 2021 stating that there is no prohibition under federal law 3, that prevents state governments from issuing vaccination mandates, is misguided. Just because a law does not exist does not give anyone permission to commit an act that is in violation of Constitutional and/or federal provisions.

Affiant directs respondents to Case Law, which in every case rules that The Constitution of the United States of America is superior in standing to any non-existent law. Civil Rights Laws and other Federal Statutes prohibit violation of patient rights, invasion of privacy of patient information, and of violation of Constitutional Rights. Even in the face of that "opinion", the FDA still requires informed consent from any patient for any experimental procedure. This applies to the injection of mRNA SARS-CoV-2, which even in 2022 does not include any side effect, adverse effect or other required negative information on the insert inside the box containing the medication. **VAERS.gov** is overwhelming in its content of adverse reactions and death among those willing to allow themselves to be experimental subjects.

Please take Notice, Affiant declares that Presidential power applies only to statutes and laws during a National Emergency. Further, accountability to the Congress is required by specifying the exact

statutes and laws being affected. (Reference the National Emergency Act) This determinative phrasing, in the Act, limits the actions of the President to only impact the Laws of the land.

> **Supreme Court Alert: COVID-19: Emergency Powers and Constitutional Limits: March 23, 2020**
> **Key Points:**
> • Our country is in a national state of emergency over COVID-19. Almost every state has declared its own state of emergency, and many states have started invoking their emergency powers.
>
> • An emergency does not allow either the federal government or state governments to grant themselves any new powers. The federal government is still one of enumerated powers, and states cannot act arbitrarily.
>
> • For extreme government actions such as commandeering and confiscation, American businesses may be able to invoke constitutional rights to protect their property. . .
>
> **Constitutional Limits on Such Authority That Businesses Can Invoke:** "Even if either the federal or a state government is acting within its authority to respond to COVID-19, a state of emergency does not give it free rein to violate constitutional rights. That said, the existence of the emergency may justify limiting the scope of certain rights, at least on a temporary basis. When considering current and potential government action in the wake of COVID-19, two rights are top of mind for businesses in particular: due process and just compensation."

To clarify further, Affiant gives Notice that "We the People" have all political power as shown in all fifty-one (51) Constitutions and neither federal nor state governments have authority to lift, suspend, or override any Constitutional provisions or Constitutional Rights. The current CMS claims that the United States Government is the Supreme Law of the Land is taking a quote out of context. To be absolutely correct, Article VI, states that the U.S. Constitution and the Laws passed by Congress along with any Treaties constitute the "Supreme Law of the Land." Then Amendments IX and X provide that all powers not expressly granted to the three branches of the Federal Government are retained by the States and by the "People." This translates into one important fact, the "People" hold all power not previously granted to the federal branches of government and prior to all the foregoing, Article IV, § 2, states that Constitutional Rights and Immunities are equally shared by all of the States. See references for authority held by the People:

> **Washington State Constitution, Article I, Declaration of Rights, Section 2**
> "The Constitution of the United States is the Supreme Law of the Land."
>
> **The United States Constitution – Article VI Section p. 2:** "This Constitution and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Law of any State to the Contrary notwithstanding."
>
> **The United States Constitution – Article IV, Section 2, p. 1:**
> "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."
>
> **The United States Constitution – Article IX:** "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.
>
> **The Constitution of the United States - Bill of Rights, Amendment X:** "The powers not delegated to the United States by the Constitution, nor prohibited by the States, are reserved to the States respectively, or to the People."

Affiant also Notifies all respondents that laws not supported by both federal and/or state Constitutions have no standing; therefore executive orders, not having been passed by the representatives of the "People" are not laws, do not carry the legal weight of the "Law". During a National Emergency, the President of the United States of America is bound by Constitutional provisions; is bound by the National Emergency Act's restrictions/requirements to specify to Congress all affected laws and statutes; and is required to issue reports to the Congress every six

months in a file, with an index, of all significant orders issued. His executive branch has no power to make, amend, or rescind Laws and any executive edicts are subject to Congressional actions.

Affiant gives further Notice to the decision makers at Harbors Home Health and Hospice that requiring Affiant to get a medical procedure, before returning to work, after a vacation, without also requiring all returning employees to have this medical procedure, is discrimination and deprivation of Civil Rights. This is a violation of the Civil Rights Act of 1964 and due to Constitutional infringement, federal statutes are also triggered.

Notice is also given by Affiant that adopting these unlawful and Unconstitutional mandates under orders of Governor Inslee and/or of President Biden was/is acting under "Color of Law" as a 'de facto" government agent. Any entity, official, or public officer acting under Color of Law or in any other capacity, who violates the Constitutional and Civil Rights, such as "due process," of any of the "People," has already risked or is currently risking felony charges. In addition, unofficial public servants, also called agents, are required to adhere to the State Oath of Office for public officers. That Oath when violated can result in charges of malfeasance and maladministration as a government official. Oath provisions apply to private persons/entities who act to further government interests:

> REVISED CODE OF WASHINGTON (RCW) 43.01.020 "The governor, lieutenant governor, secretary of state, treasurer, auditor, attorney general, superintendent of public instruction, commissioner of public lands, and insurance commissioner, shall, before entering upon the duties of their respective offices, take and subscribe an oath or affirmation in substance as follows: 'I do solemnly swear (or affirm) that I will support the Constitution of the United States and the Constitution and laws of the state of Washington, and that I will faithfully discharge the duties of the office of (name of office) to the best of my ability.'"

Affiant, giving further Notice, declaring that the government workers are the servants and trustees of the people as seen in the Constitutions of Washington, and of Arizona; the roles and powers of the three branches of government were created by the "People". (See evidence below):

> Washington State Constitution, Article I, Declaration of Rights, Section 1. Political Power: "All political power is inherent in the People, and governments derive their just powers from the consent of the governed, and are established to protect and maintain individual rights."
>
> Arizona State Constitution, Article 2, Section 2-Political Power: Purpose of Government: "All political power is inherent in the people, and governments derive their just powers from the consent of the governed, and are established to protect and maintain individual rights."

Take careful Notice of Affiant's warning to the decision makers at Harbors Home Health and Hospice that such overreach, with this adoption of government mandates, is unlawful, Unconstitutional, and also violates several Federal Civil Rights Laws. Penalties listed in the federal statutes include prison terms up to life, and fines up to $10,000 are provided for Deprivation of Constitutional and/or Civil Rights. For example, the Civil Rights Act of 1964 Title VII SEC. 2000e-1. [702]—2.[703] prevents employers from using religious beliefs or practices as grounds for termination or discrimination. Religious practices and creeds are both Constitutionally protected Rights, which includes the Right to choose. That choice includes "We the Peoples'" Right to liberty and safety and due process. Affiant did not receive "due process." See references below:

> Washington State Constitution, Article I, Declaration of Rights, Section 11. "Absolute freedom of conscience in all matters of religious sentiment, belief and worship, shall be guaranteed to every individual, and no one shall be molested or disturbed in person or property on account of religion;. ...No religious qualification shall be required for any public office or employment ..."
>
> United States Constitution, Amendment IV. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Please take further Notice, Affiant states that no law has been passed requiring injections because this is a Constitutional issue. Any vaccine mandate, imposed within the state, interferes with the "Peoples'" Right to live freely, and to pursue and obtain safety and happiness. Current mandates or any future attempt to institute a mask or vaccine mandate, of any kind, prevents the "People" from enjoying their inherent right to freedom of religion, freedom of liberty and the right to pursue and obtain safety and happiness.

> Constitution of the United States, Amendment XIV, Section 1: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Please take further Notice, Affiant states, unequivocally, that no person shall be deprived of liberty without due process of law, nor be denied equal protection of the laws, nor be denied the enjoyment of any Civil Right, nor be discriminated against in the exercise thereof. These are all Constitutional Rights protected in every state and in our National "Bill of Rights." The Oath of Office taken by every public officer and binding every 'de facto' government agent in every state includes the vow to protect and defend the Constitution of that State and of the United States of America Constitution, (REVISED CODE OF WASHINGTON (RCW) 43.01.020) This also includes protecting the Rights of the "People" against incursions on their personal freedoms of liberty and religion and creeds.

> Washington State Constitution, ARTICLE I—DECLARATION OF RIGHTS, SECTION 12: SPECIAL PRIVILEGES AND IMMUNITIES PROHIBITED. "No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations."

> Washington State Constitution, ARTICLE I—DECLARATION OF RIGHTS, SECTION 3, PERSONAL RIGHTS: "No person shall be deprived of life, liberty, or property, without due process of law."

Please take Notice, Affiant declares that all public officers have taken vows to defend and support both Constitutions that guarantee the "People" every right listed in all Bills of Rights. This means that all government officials must support those Rights and so must all those acting as agents of the government. Supporting and enforcing an unlawful and Unconstitutional mandate or edict is a violation of the trust indenture of all public servants. "We the People" are not slaves to our government. Both State and Federal Constitutions preclude such control over any of the "People."

> The Constitution of the United States, Amendment XIII: "Neither slavery nor involuntary servitude . . . shall exist within the United States or any place subject to their jurisdiction."

> North Dakota Constitution, Declaration of Rights, Article 1, § 6:
> "Neither slavery nor involuntary servitude, unless for the punishment of crime, shall ever be tolerated in this state."

Affiant gives stern Notice of warning to all 'de facto' public servants. All such officials are held to a strict code of ethics and of conflict of interest provisions that prevent the realization of financial gain from any action taken while acting as a public officer. Constitutional provisions, Washington state legislation, State Ethics in Public Service Act, RCW 42.52, and federal legislation all specify criminal penalties for violations. See below;

> COMPILATION of FEDERAL ETHICS LAWS, CONFLICTS OF INTEREST 18 U.S.C. § 201, Bribery of public officials and witnesses . . . "(e) The offenses and penalties prescribed in this section are separate from and in addition to those prescribed in sections 1503, 1504, and 1505 of this title." [Emphasis Added by Highlight]

The Constitution of the State of Louisiana, Article III, Section 9: Conflict of Interest
"Legislative office is a public trust, and every effort to realize personal gain through official conduct is a violation of that trust. The legislature shall enact a code of ethics prohibiting conflict between public duty and private interests of members of the legislature."

Affiant gives further Notice that CARES ACT funding is public information. Washington State received a substantial amount of these funds. As stated above, Constitutional status as a government official prevents anyone in office from accepting financial compensation for performing a service, and federal monies doled out to the states and counties separately under the COVID-19 relief plans is substantial, a huge inducement to wrongdoing. The important point being made here is that Unconstitutional uses are not allowed. Under a test provided in South Dakota v. Dole, 483 U.S. 203 (1987), Congress placed a condition on receipt of federal funds by a state that requires the following. conditions must be met:

- the spending must serve the general welfare,
- the condition placed on the state must be unambiguous,
- the condition must relate to the particular federal program,
- unconstitutional action cannot be a contingency for receipt of the funds . . .
- the amount in question cannot be so great that it can be considered coercive to the state's acceptance of the condition.

Please take further Notice, Affiant instructs the reader of the following facts re: Cui Bono? (Who benefits?) Under the CARES Act, the Coronavirus Relief Fund (CRF) is to be used to make payments for specified uses to states and local governments. The total CRF funding allocated to the state of Washington is approximately $45.2 billion. "De facto" agents are accountable for these appropriations which when used for Unconstitutional uses must be returned.

Specific Notice by Affiant informs all respondents, listed as Harbors Home Health and Hospice decision makers, that they must provide, in an affidavit, sworn under penalty of perjury, the Constitutional authority being used to Trespass against the Rights of Affiant, one of the "People," by mandating the following actions: 1) COVID-19 testing prior to Affiant returning to work; 2) experimental COVID-19 injections as a condition of continued employment, including presentation of a document proving such vaccinations have been obtained or a medical exemption signed by a doctor, or a company supplied document requesting religious exemption that includes privileged and private information; and further, 3) applying for and/or accepting private and/or federal funding to use for purposes r/t adopting and enforcing unlawful and Unconstitutional COVID-19 mandates; and finally, 4) neglecting to thoroughly research all aspects of the issue, both legal and medical before implementing mandates which is a violation of both Federal Statutes and Constitutional Rights guaranteeing personal Safety and Liberty to the "People".

Affiant gives Notice of warning to all Harbors Home Health and Hospice respondents that they have ten (10) days to answer this Affidavit, point by point as listed above by affidavit sworn under penalty of perjury, listing the exact Constitutional authority used to Trample on the Rights of Affiant as one of the "People." After ten (10) days have passed without the legal required response reaching Affiant, this silence, legally, represents the following: 1) tacit agreement that all parties involved who approved the adoption and implementation of this COVID-19 mandate, Trespassed against the Constitutional and Civil Rights of Affiant, as one of the "People," while also committing violations against the State Statutes, re: medical negligence/malpractice, and practicing medicine without a license (where applicable) by making arbitrary medical decisions for non-patients; 2) tacit agreement

that this violation, of the Constitutional and Civil Rights of Affiant as one of the "People," includes liability for physical, mental, emotional, spiritual and financial injury sustained as a result of either Affiant yielding to or resisting the pressure to comply with this Harbor Home Health and Hospice mandate; 3) tacit agreement that (if applicable) accepting private and/or federal monies to Trample the Rights of Affiant as one of the "People," also violates(ed) Affiant's State of Washington Constitutional Rights; and Affiant's United States of America Civil and Constitutional Rights; 4) tacit agreement that to attempt coerced consent for any medical treatment, violates Affiant's Constitutional and Civil Rights, HIPAA, EEOC, GINA, and ADA, as well as other federal statutes; and further, 5) tacit agreement that this coercion forced Affiant to make a life-impacting decision based on the limited choices offered by employer.

Affiant gives Notice that $550,000.00 restitution is required, per encroachment, point for point, as the penalty to be paid by the Harbors Home Health and Hospice, its Board of Directors, Members, Officers, administrators and managers collectively. The following individuals: Norm Sprague, Darlene Greenawalt, Melissa Dhooghe, and also Medical Director; Juliette Erickson, MD, were all decision makers who adopted unlawful, Unconstitutional mandates which contributed to Affiant's injury either directly or indirectly with their Trespass against the Constitutional and Civil Rights of Affiant, and are required to make individual restitution related to the degree of their involvement, their participation and/or their fervor in convincing the other members to take this action. These are:

1. Board Officers, Board Members, and/or administrators and managers listed above, are personally and individually culpable. Additional restitution is required in the amount of $75,000.00 each for failure to research the State and Federal laws, Supreme Court Opinions, limits of National Emergency Powers of a President, and all of the medical research information available on the virus and on the mRNA "vaccine" before coercing employees to accede to these COVID-19 mandates. This is a direct denial of "due process," and Constitutional Right to Safety.

2. Board Officers, Board Members, and/or administrators and managers listed above, are personally, and individually culpable. Additional restitution is required in the amount of $75,000.00 each for violating Constitutional and Civil Rights of Affiant, one of the "People," in direct violation of provisions sited in this document.

3. All Administrators, Supervisors, and other non-board members listed above, are personally and individually culpable. Additional restitution is required in the amount of $75,000.00 each for coercion against employees along with harassment in violation of Federal EEOC, HIPAA, ADA, and GINA Laws during the attempt to force acceptance of the invasive testing and vaccinations while holding the threat of job loss over Affiant's and other employees' heads.

4. Medical Director Juliette Erickson MD is individually culpable. Additional restitution is required in the amount of $1,000,000.00 for her role in influencing the Harbors Home Health and Hospice Board of Directors which resulted in the adoption of this unlawful and Unconstitutional COVID-19 mandate. Her influence as a physician far exceeds that of the average person, therefore her share of responsibility for damage and injury must be higher.

Please take final Notice, Affiant declares that if no response is received in the form of an affidavit sworn under penalty of perjury within ten (10) days after receipt of Affiant's affidavit showing the Constitutional provisions authorizing this Trampling on the People's rights, such silence will be construed to represent tacit agreement to all of the above mentioned facts, point for point, and also tacit agreement that this affidavit can be used as evidence of 1) Constitutional malfeasance and maladministration in their role as a "de facto" servants of the "People," 2) admission of behavior

resulting in injury whether economic, physical, mental, emotional and/or spiritual where employees were forced, coerced, and/or harassed into compliance and/or resistance that resulted in loss of Affiant's employment due to both Civil and Constitutional Rights, discrimination and deprivation; 3) liability for injury sustained by Affiant, as a result of deprivation of both Constitutional and Civil Rights, by respondents while acting as an agent of the government by requiring compliance with Unconstitutional gubernatorial COVID-19 orders or mandates; 4) liability for medical malpractice and/or contributory negligence, as well as, of practicing medicine without a license by the mandating of medical procedures for all employees of Harbors Home Health and Hospice by individuals, who were not the physician of record for the employee, which is deprivation of Constitutional Rights and violation of state statutes. And further, this silence represents tacit agreement that no court shall re-examine this matter; that the courts shall accept the above several agreements listed, regardless of the Trespasser, as truth and law. Affiant agrees to arbitration by an arbitrator of Affiant's choice.

---

## Verification

I hereby declare, certify, subscribe, and affirm that under the lawful laws of the United States of America and by the provisions of 28 USC § 1746 that all the above and foregoing representations are true and correct to the best of my knowledge, information, and belief.

Executed in the State of _Arizona_ on this _23_ day of _September_ in the Year of Our Lord Two Thousand Twenty-two.

Autograph Affiant: _____

## ARIZONA NOTARY ACKNOWLEDGEMENT
## (JURAT)

State of Arizona

County of _Maricopa_

Subscribed and sworn (or affirmed) before me this _23_ day of _September_ 20 _22_, by

_Marca Ouida_ (name of signer)

_____
Notary Public Signature

_Notary Public_
Title or Rank

(Seal)

CHERIE A SINCLAIR
Notary Public, State of Arizona
Maricopa County
Commission # 610873
My Commission Expires
October 25, 2025

_616673_
Serial Number, if any

My Commission Expires: _10/25/2025_

7J: ;4;F 4

From: Marca Ouida
P.O. Box 111
Charlton Heights, West Virginia  25040
(Attn: Address Change since Affidavit served)

To: Harbors Home Health and Hospice
c/o Board of Directors
201 7th Street
Hoquiam. WA 98550

*CMS Certification Number: 501525

To: Harbors Home Health and Hospice
Medical Director, Juliette Erickson, MD
4618 Village Court S. E.
Olympia, Washington 98501

To: Harbors Home Health and Hospice
Human Resource Director, Melissa Dhooghe
201 7th Street
Hoquiam. WA 98550

To: Harbors Home Health and Hospice
Chief Executive Officer, Darlene Greenawalt
201 7th Street
Hoquiam. WA 98550

**Courtesy Notice**

**Notice to Agent is Notice to Principal and Notice to Principal is Notice to Agent**

**Legal Notice Read Carefully**

I, **Marca Ouida**, (one of the People as found in the **Arizona State Constitution, Article II, Section 2: Political Power, Purpose of Government**; and the **U.S. Constitution Article IV, Section 2: "Citizens of each state State shall be entitled to all priveleges and immunities of Citizens of the several States. . ."**), come Sui Juris, in this Court of Record, giving you Notice of the following claims and facts that you and your agents may provide due care;

Please take Notice, that this facility, **Harbors Home Health and Hospice**, its medical and administrative staff, and all its individual decision makers were served with my affidavit on the **26th** day of **September**, in the year **2022** regarding violations of Constitutional Rights and Discrimination, in which ten (10) business days were given for a response. I have attached a notarized copy.

Take additional Notice that your legal representative, Jackson Lewis P. C., sent a letter whose contents did not specify the Constitutional authority or the federal authority used by their client to implement the policies which resulted in Affiant's pre-emptive resignation. This was the document required by the Affidavit referenced in the previous paragraph. In the event that this legally served document's requirements were misunderstood, Affiant grants ten (10) more business days, from the day of receipt of this document to provide the exact Constitutional authority used to deny Affiant's Constitutional and Civil Rights as specified in Affiant's Affidavit in paragraph three page one. This specific document, an affidavit sworn under penalty of perjury, is the required answer to Affiant's Affidavit.

In an effort to prevent any further misunderstanding, Notice is hereby given using clear straightforward language: Affiant states that the letter from Jackson Lewis P. C. dated September 29, 2022, received on October 5, 2022, was not the answering document required by the Affidavit; and does not meet the legal conditions set forth in the original Affidavit. This law firm's

**From:**
Marca Ouida
P.O. Box 111
Charlton Heights, West Virginia 25040
(Attn: Address Change since Affidavit)

**To:**    Harbors Home Health and Hospice.
c/o Board of Directors
201 7th Street
Hoquiam, WA 98550

\*CMS Certification Number: 501525

**To:** Harbors Home Health and Hospice
Medical Director, Juliette Erickson, MD
4618 Village Court S. E.
Olympia, Washington 98501

**To:** Harbors Home Health and Hospice
Human Resource Dr. Melissa Dhooghe
201 7th Street
Hoquiam, WA 98550

**To:** Harbors Home Health and Hospice
Chief Executive Officer, Darlene Greenawalt
201 7th Street.
Hoquiam, WA 98550

## Notice of Default

### Notice to Agent is Notice to Principal and Notice to Principal is Notice to Agent

### Legal Warning Read Carefully

I, **Marca Ouida**, (one of the People as found in the <u>Arizona State Constitution, Article II, Section 2:</u>
<u>Political Power, Purpose</u> of Government, and the <u>U.S. Constitution Article IV, Section 2:</u> "Citizens of
each state State shall be entitled to all priveleges and immunities of Citizens of the several States. . ."),
come Sui Juris, in this Court of Record, giving you Notice of the following claims and facts that you and
your agents may provide due care;

Please take Notice, that this facility, **Harbors Home Health and Hospice**, its medical and administrative
staff, and all its individual decision makers were served with Affiant's Affidavit on the <u>26th</u> day of
<u>September</u>, in the year 2022 regarding violations of Affiant's Constitutional and Civil Rights, in which <u>ten</u>
<u>(10)</u> business days were given for a response.  The letter received from your legal representative, Jackson
Lewis P. C., did not specify "the Constitutional authority" used by their client to deny Affiant's
Constitutional and Civil Rights to implement the policies which resulted in Affiant's pre-emptive
resignation. This was the document referenced in answer to the Rights infringements enumerated on page
one; paragraph three of the Affidavit.  The details to be contained in that document were listed on pages 6-8
of that Affidavit.  Therefore a **Courtesy Notice** was sent reminding both their agent and this facility of their
legally required response to Affiant's Affidavit and providing an additional copy of that notarized document.
A response time of ten (10) business days was specified after receipt of this document which was sent on the
12th and 13th day of December in the year 2022.  That time, extended due to the holidays, has expired.
**Harbors Home Health and Hospice**, its medical and administrative staff, and all its individual decision
makers, are now legally in Default.

Notice is given that Affiant recognizes the possibility still exists that the respondent (s) did not understand
the manner of response and/or that a response is legally required.  Pages 6 through 8 of the Affidavit detail
the manner of response, the content of response, as well as the civil and criminal consequences risked for
enforcement of this both illegal and unconstitutional mandate.  Therefore, from the date of receipt of this
**DEFAULT NOTICE**, the above respondents are being given an additional <u>ten (10)</u> business days to answer
with their Constitutional Authority to deny Affiant's Civil Rights under our national labor laws and under
our protected Constitutional Rights to Life, Liberty and the Pursuit of Happiness.

Additionally, Affiant instructs the **Harbors Home Health and Hospice**, its medical and administrative staff,
and all its individual decision makers that the absence of a timely response to this **DEFAULT NOTICE**
and/or failure to rebut my claims in the affidavit form specified above, will serve as <u>acquiescence and tacit</u>
<u>agreement</u> that the factual declarations, set forth in the referenced Affidavit above, are true, correct, not

misleading, and are binding upon **Harbors Home Health and Hospice** , its medical and administrative staff, and all its individual decision makers regardless of the trespasser.

Further Notice is given that Affiant provides the following definitions and citations for you and your agents' use as a guide to assist your understanding of the serious nature of this legal document and of the legal consequences that failure to answer Affiant's Affidavit will set in motion:

1) **Black's Law Dictionary, Fourth Edition.**
"A default is a+n omission of that which ought to be done, and more specifically, the omission or failure to perform a legal duty. The term also embraces the idea of dishonesty, or an act or omission discreditable to one's profession."

2) Tacit is defined by **Bouvier's Law Dictionary, 14 Edition, Vol II, page 576:** That which although not expressed, is understood from the nature of the thing or from the provision of the law; implied;"

3) Tacit is defined by **Black's Law Dictionary, Fourth Edition:** 'Existing, inferred, or understood without being openly expressed or stated, implied by silence or silent acquiescence, understood, implied as tacit agreement, a tacit understanding."[See, State v. Chadwick, 150 Or. 645, 47 P.2d 232, 234 (1935)].

4) **"Tacit Law" is defined by Ballentine's Law Dictionary, Third Edition, page 1252:** "That law which arises out of the silent consent and customs and usages of the people"

5) **"Tacit Law" is defined by Bouvier's Law Dictionary, 14 Edition, Vol II, page 576:** "A law which derives its authority from the common consent of this people without any legislative enactment." (1 Bouvier, Inst. 120).

Affiant finally and specifically Notifies all Respondents of the following, should your 'tacit silence' continue: Due to **Harbors Home Health and Hospice** , its medical and administrative staff, and all its individual decision makers' failure to perform a legal duty where these respondents had a legal and moral obligation to speak, this "DEFAULT NOTICE" serves as prima facie evidence of your Silent Acquiescence" in this matter; pursuant to **U.S. v. Prudden, 424 F.2d 1021 (1970)** and pursuant to **U.S. v. Tweel, 550 F.2d 297, 299 (1977).**

Affiant closes this document with explicit reservation of all Affiant's unalienable and Constitutionally secured and protected Rights, and any other Rights, Privileges and Immunities Affiant may have, with none waived, and without prejudice.

---

## Verification

I hereby declare, certify, subscribe, and affirm that under the lawful laws of the United States of America and by the provisions of 28 USC § 1746 that all the above and foregoing representations are true and correct to the best of my knowledge, information, and belief.
Executed in the State of *West Virginia* on this 20th day of *January* in the Year of Our Lord Two Thousand Twenty-three.

Autograph Affiant: _____

### WEST VIRGINIA NOTARY ACKNOWLEDGEMENT
### (JURAT)

State of West Virginia

County of *Kanawha*

Subscribed and sworn (or affirmed) before me this __20__ day of __Jan__, 20__23__, by

*Manca Ouida* _____ (name of signer)

_____
Notary Public Signature

*No tary*
Title or Rank

*215950*
Serial Number, if any

(Seal)

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
Cecil L. Terry, III
3501 MacCorkle Ave SE
Charleston, WV 25304
My Commission Expires April 17, 2025

My Commission Expires: __4/17/2025__

document, referencing Affidavit described in paragraph one, guarantees that Harbors Home Health and Hospice is recognizing that a problem exists with a previous employee whose employment records are now part of an ongoing potential litigation and must be protected and/or preserved.

Take careful Notice, Affiant directs **Harbors Home Health and Hospice**, its medical and administrative staff, and all its individual Covid-19 Policy decision makers to review the final paragraphs of the above mentioned Affidavit on pages 6 and 7. Those paragraphs detail the manner of your response, the content of your response, and the civil and criminal price you risk by your "Silence." Reference Black's Law Dictionary for definitions applicable to issues of law raised in Affiant's Affidavit. This facility and all of its agents has/have been legally served.

---

## Verification

I hereby declare, certify, subscribe, and affirm that under the lawful laws of the United States of America and by the provisions of 28 USC § 1746 that all the above and foregoing representations are true and correct to the best of my knowledge, information, and belief.

Executed in the State of _West Virginia_ on this _06_ day of _December_ in the Year of Our Lord Two Thousand Twenty-two.

Autograph Affiant: _____

ARIZONA NOTARY ACKNOWLEDGEMENT
West Virginia    (JURAT)

State of ~~Arizona~~ West Virginia

County of _Kanawha_

Subscribed and sworn (or affirmed) before me this _6th_ day of _December_, 20 _22_, by _Marca Ouida_ (name of signer)

(Seal)

Notary Public Signature

_Notary Public_
Title or Rank

_N210325000952_
Serial Number, if any

My Commission Expires: _03/25/2026_

From:
Marca Ouida
P.O. Box 111
Charlton Heights, West Virginia 25040
(Attn: Address Change since Affidavit)

To:    Harbors Home Health and Hospice
.c/o Board of Directors
201 7th Street
Hoquiam, WA 98550

*CMS Certification Number: 501525

To:  Harbors Home Health and Hospice
Medical Director, Juliette Erickson, MD
4618 Village Court S. E.
Olympia, Washington 98501

To:  Harbors Home Health and Hospice
Human Resource Director Melissa Dhooghe
201 7th Street
Hoquiam, WA 98550

To:  Harbors Home Health and Hospice
Chief Executive Officer, Darlene Greenawalt
201 7th Street
Hoquiam, WA 98550.

## Notice of Estoppel

### Notice to Agent is Notice to Principal and Notice to Principal is Notice to Agent

### Legal Warning Read Carefully

I, **Marca Ouida**, (one of the People as found in the **Arizona State Constitution, Article II, Section 2: Political Power, Purpose of Government**, and the **U.S. Constitution Article IV, Section 2: "Citizens of each State shall be entitled to all privileges and immunities of Citizens of the several States. . ."**), come Sui Juris, in this Court of Record, giving you Notice of the following claims and facts that you and your agents may provide due care;

Please take Notice, that this facility, **Harbors Home Health and Hospice**, its medical and administrative staff, and all its individual decision makers were served with Affiant's Affidavit on the **26th** and on the **27th** day of **September**, in the year **2022** regarding violations of Affiant's Constitutional and Civil Rights, in which **ten (10)** business days were given for a response. The specific document response, in a sworn: Affidavit form, required the Constitutional authority employed to deny Affiant's protected Constitutional and Civil Rights. Those infringements were enumerated on page one, paragraph three of the Affidavit. Pages six through eight detailed specific violations requiring Constitutional authorization. The letter received from your legal representative, Jackson Lewis P. C., did not specify "the Constitutional authority" used to deny Affiant's Constitutional and Civil Rights, nor was it a sworn Affidavit.

Take additional Notice that Affiant also sent the following legal documents: 1) a **Courtesy Notice** reminding this facility, **Harbors Home Health and Hospice**, its medical and administrative staff, and all of its individual decision makers of their legally required response to Affiant's Affidavit, including an additional copy of the original notarized Affidavit. Ten (10) business days were specified for a response after receipt of those documents, served on the **12th** and on the **13th** of **December** in the year **2022**. That time, extended due to the holidays, expired without any response; 2) **Notice of Default** was served on the **27th and 28th** of **January,** in the year **2023**, which provided explicit legal warnings and additional legal definitions including "Tacit Silence", defined item three from page two of the Default Notice:

> "Tacit is defined by Black's Law Dictionary, Fourth Edition: 'Existing, inferred, or understood without being openly expressed or stated, implied by silence or silent acquiescence, understood, implied without agreement, a tacit understanding."[See, State v. Chadwick, 150 Or. 645, 47 P.2d 232, 234 (1935)]."

Legally, this means that **Harbors Home Health and Hospice**, its medical and administrative staff, and all its individual decision makers and other agents have agreed by their "Silence", by their non-response, that they had no Constitutional authority to deny Affiant's Constitutional and Civil Rights. Although Arizona was used for definition of Affiant's standing as "one of the People", the violations occurred under the **State of Washington Constitution,** including **Article II, Sections: 2, 3, 7, 8, 11** and **12**. No such document containing the relevant Constitutional authority has been received to this date.

Notice is ultimately given of Affiant's declaration to the **Harbors Home Health and Hospice**, its medical and administrative staff, and all its individual decision makers that the absence of a timely response to the **DEFAULT NOTICE** and/or failure to rebut Affiant's claims in the affidavit form specified above, serves as an **acquiescence and tacit agreement** that the factual declarations, set forth in the referenced Affidavit above, are true, correct, not misleading, and are binding upon **Harbors Home Health and Hospice**, its medical and administrative staff, and all its individual decision makers regardless of the trespasser.

Please take further Notice, Affiant states that **Harbors Home Health and Hospice**, its medical and administrative staff, and all its individual decision makers' failure to respond, with the specified document sworn under penalty of perjury, in the allotted number of days, was defined in the **Default Notice** to be **"TACIT SILENCE"**. When that Notice resulted in SILENCE again, more time was allowed. As of the **3rd** day of **March**, of the year **2023**, your continued SILENCE, requires that Affiant serve you with this Notice of **DOCTRINE OF ESTOPPEL BY ACQUIESCENCE**.

Please take final Notice, Affiant declares that, **Harbors Home Health and Hospice**, its medical and administrative staff, and all its individual decision makers has perpetrated a fraud upon Affiant, one of the People living in the State Washington, pursuant to **U.S. v. Tweel. 550 F.2d 297.299 (1977)**, thereby initiating the **DOCTRINE OF ESTOPPEL BY ACQUIESCENCE**, pursuant to **Carmine v. Bowen. 64A. 932 (1906)**, to wit, **"One's silence may invoke doctrine of ESTOPPEL by acquiescence"**, which is now in full force and effect upon **Harbors Home Health and Hospice**, medical and administrative staff, and all its individual decision makers regardless of the trespasser status.

---

### Verification

I hereby declare, certify, subscribe and affirm that under the lawful laws of of the United States of America and by the provisions of 28 USC § 1746 that all of the above and foregoing representations are true and correct to the best of my knowledge, information, and belief.

Executed in the State of _West Virginia_ on this _10th_ day of _MARCH_ in the Year of Our Lord Two Thousand Twenty-three.

Autograph Affiant: _____

### WEST VIRGINIA NOTARY ACKNOWLEDGEMENT
### (JURAT)

State of West Virginia
County of _Raleigh_

Subscribed and sworn (or affirmed) before me this _10_ day of _March_, 20 _23_, by:

_Marca Dade_ (name of signer).

(Seal)

_____
Notary Public Signature

_Notary Public_
Title or Rank

_N211105001941_
Comission Number, if any

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
Krista Rene Maddy
The UPS Store
1035 N EISENHOWER DR
BECKLEY WV 25801
My Commission Expires 11/05/2026

My Commission Expires: _11/05/2026_