UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MARCA OUIDA,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>HARBORS HOME HEALTH AND HOSPICE et al,<br><br>　　　　　　　　Defendants. | CASE NO. 3:23-cv-05356-DGE<br><br>ORDER ON MOTION FOR SUMMARY JUDGMENT (DKT. NO. 72) |

## I.   INTRODUCTION

This matter comes before the Court on Defendants' motion for summary judgment. (Dkt. No. 72.)  For the reasons stated herein, the Court GRANTS the motion.

## II.   BACKGROUND

**A.  Note on Factual Record Considered**

As a preliminary matter, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including . . . affidavits or declarations[.]" Fed. R. Civ. P. 56(c)(1)(A).  The Court may not

ORDER ON MOTION FOR SUMMARY JUDGMENT (DKT. NO. 72) - 1

consider affidavits or declarations not made under penalty of perjury as factual evidence. *Hoffman v. PennyMac Holdings, LLC*, 2018 WL 6448779, at *3 (W.D. Wash. Dec. 10, 2018).

Plaintiff did not certify her opposition under penalty of perjury, nor did she submit a sworn affidavit in support of her opposition. (*See generally* Dkt. No. 77.) Likewise, she did not certify her second amended complaint under penalty of perjury. (Dkt. No. 59.)

Accordingly, the Court considers only the below facts Defendants put forth in their sworn declarations (Dkt. Nos. 73, 74) and other properly submitted evidence on the record.

B.  Factual Background

Plaintiff is a former employee of Harbors Home Health and Hospice ("Harbors"). Harbors is a private, non-profit, healthcare and hospice facility located in Washington. (Dkt. No. 74 at 1.) Plaintiff began working at Harbors on February 10, 2015 as a physical therapy assistant. (*Id.*) In December of 2015, Harbors provided her a job description detailing her role and responsibilities. (*Id.*; Dkt. No. 74-1.) In part, the job description said, "job descriptions are not intended and do not create employment contracts. The organization maintains its status as an at-will employer." (Dkt. No. 74-1 at 5.) It further stated, "In no instance . . . should the duties, responsibilities, and requirements delineated be interpreted as all inclusive. Additional functions and requirements may be assigned by supervisors as deemed appropriate." (*Id.*) In February of 2021, Plaintiff signed a second job description outlining her new role as a telehealth coordinator. (Dkt. No. 74-2 at 5.) This job description had identical disclaimer language as the first. (*Compare id. and* Dkt. No. 74-1 at 5.)

In August 2021, following a Washington State mandate responding to the COVID-19 pandemic, Harbors instituted "a vaccine policy that required all employees to receive vaccinations unless a reasonable accommodation was approved." (Dkt. No. 74 at 2.) Harbors

1   gave notice to its employees that those who chose not to vaccinate by October 18, 2021 "would
2   be placed on unpaid leave unless they submitted a request for a medical or religious reasonable
3   accommodation[,]" which Harbors needed to pre-approve.  (*Id*.)  Harbors instructed employees
4   seeking medical or religious exemptions "to submit a Request for Accommodation form to the
5   HR Department[.]"  (*Id*.)  Harbors would grant such accommodations if "they did not cause
6   [Harbors] undue hardship or pose a direct threat to the health and safety of others."  (*Id*.)

7         On August 30, 2021, Plaintiff reached out via email to Defendant Dhooghe, Harbors'
8   Director of Human Resources and Compliance.  (Dkt. No. 74-3 at 4.)  In her email, she inquired
9   about the policy, querying whether Harbors would "sign a liability acceptance agreement if one
10  of their employees is 'vaccinated' due to the threat of termination, if they are injured[.]"  (*Id*.)
11  She also asked whether Harbors' medical insurance would cover employees "if [they] are injured
12  by the still licensed as an experimental 'vaccine' with questionable FDA approval."  (*Id*.)  She
13  asserted "the governors [sic] unlawful mandate to deny employment impinges on the
14  fundamental right to pursue a lawful calling and this has been upheld in numerous courts and has
15  an [sic] upheld ruling as a violation of the 14th amendment of the US Constitution."  (*Id*.)
16  Plaintiff suggested the government mandate required employers to "discriminate based on
17  medical status, which is an explicitly protected right of the people, their medical status and
18  medical privacy."  (*Id*.)

19        That same day, Defendant Dhooghe responded to Plaintiff's email indicating Harbors
20  would review her questions and that in the meantime Plaintiff should "get tested prior to
21  returning" to the office.  (*Id*.)  Plaintiff and Defendant Dhooghe emailed back and forth a few
22  times, discussing the logistics of a COVID-19 nasal swab test.  (*Id*. at 3–4.)  Ultimately, Plaintiff
23  indicated she would not perform a nasal swab test, as she found this an "invasive medical
24

ORDER ON MOTION FOR SUMMARY JUDGMENT (DKT. NO. 72) - 3

procedure [to which she did] NOT consent." (*Id*. at 2.) On August 31, 2021, Defendant Dhooghe responded to Plaintiff's refusal to test, saying she was "reviewing [Plaintiff's] comments with [Defendants Greenawalt and Minzey]." (*Id*.)

On August 31, 2021, Defendant Dhooghe and Defendant Greenawalt called Plaintiff to discuss her concerns. (Dkt. No. 74 at 2.) In the call, Plaintiff did not "mention[] anything about her religious beliefs, requesting a religious accommodation, or otherwise opposing [Harbor's] vaccine policy on religious grounds." (*Id*.) Plaintiff did not discuss "being Christian, that the vaccination and PCR test were against her religious beliefs, that she was requesting [Harbors] provide her with an accommodation, that [Harbors] accommodate her work as they already had for the past 18 months, or that [Defendant Dhooghe] send her a religious exemption form via email."[1] (*Id*.)

On September 2, 2021, Plaintiff submitted a resignation letter via email to Defendant Dhooghe. The email stated, "[d]ue to personal family matters, [Plaintiff] need[ed] to resign." (Dkt. No. 74-5 at 2.) The email is generally positive in tone and makes no mention of the vaccine policy, the testing requirements, or any religious discrimination. (*Id*.)

**C.  Procedural Background**

In August 2022, Plaintiff filed a claim against Defendant Harbors with the Equal Employment Opportunity Commission ("EEOC"). (Dkt. No. 74-6.) Plaintiff alleged Harbors had discriminated against her on the basis of her age, disability, and religion. (*Id*. at 3.) The

---

[1] Plaintiff asserts in her unsworn opposition that Defendants "mandat[ed] in-person retrieval of a [religious accommodation] form instead of emailing it [and gave her] a pointed reminder about a swab test." (Dkt. No. 77 at 6.)

EEOC declined to investigate the matter further and gave Plaintiff notice of her right to sue. (Dkt. No. 74-7 at 2.)

On April 24, 2023, Plaintiff brought suit in this Court against Defendant Harbors and Individual Defendants Dhooghe, Erickson, and Greenawalt. (Dkt. No. 1.) After the Court denied Plaintiff's motion for default (Dkt. No. 34), Plaintiff filed a first amended complaint on June 29, 2023 (Dkt. No. 39). The Court then ordered the parties complete discovery by July 1, 2024. (Dkt. No. 47.) Upon receiving permission from the Court (Dkt. No. 56), Plaintiff filed a second amended complaint ("SAC") on September 23, 2023 (Dkt. No. 59) which added Defendants Minzey and Stephens. Defendants then filed the instant motion for summary judgment.[2] (Dkt. No. 72.)

The SAC alleges three categories of claims.[3] First, Plaintiff alleges Defendants violated her "fundamental right to be secure in her person and [her] right to freedom of religious conscience." (Dkt. No. 59 at 7–10.) Plaintiff asserts Defendants did this by (a) creating and distributing a spreadsheet with employees' private health information, (b) sending a group text soliciting employees' private health information, (c) asking Plaintiff her vaccination status on a

---

[2] Plaintiff notes the discrepancy between the title of Defendants' motion, which lists the motion as being filed only on behalf of Defendant Harbors, and the content of the motion, which indicates all Defendants jointly filed the motion. (Dkt. No. 77 at 1–2.) The Court acknowledges the discrepancy and, based on the content of Defendants' motion and reply briefing, addresses the motion as though all Defendants brought it.

[3] Plaintiff states in her opposition that "Defendants erroneously mislabel Plaintiff's Title VII allegations and claims of Unlawful Employment Practices with constitutional concerns . . . [and that her] causes of action are firmly rooted in Unlawful Employment Practices as delineated in Title VII." (Dkt. No. 77 at 11.) Confusingly, Plaintiff also makes arguments in her opposition indicating she does intend to put forth constitutional and contract claims. (*See id.* at 11–24) (making a series of rebuttal arguments as to why the constitutional and contract claims should move forward). The Court, having reviewed the opposition and the language in the SAC itself, chooses to address the claims as constitutional, contract, and Title VII claims.

phone call, and (d) conditioned continued employment on receiving the COVID-19 vaccine. (*Id*.)

Second, Plaintiff alleges Defendants "committed a material breach of the existing employment contract with Plaintiff" when Defendant Greenawalt stated that all staff must be vaccinated. (*Id*. at 9–10.)

Third, Plaintiff alleges Defendants violated Title VII of the Civil Rights Act of 1964 ("Title VII") by unlawfully discriminating against Plaintiff's freedom of religion. (*Id*. at 10) Plaintiff asserts Defendants did this by (a) denying her oral request for accommodation and denying her access to the accommodation form by email, and (b) coercing Plaintiff's involuntary resignation. (*Id*. at 10–11.)

### III.   DISCUSSION

#### A. Legal Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve

the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. A court must consider the substantive evidentiary burden that the nonmoving party must meet at trial— e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elect. Service Inc.*, 809 F.2d at 630. A court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888–89 (1990).

### B. Constitutional Violations

Tortious constitutional violations may be brought against government actors under 42 U.S.C § 1983 or *Bivens*. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978) (holding plaintiffs may bring civil suits municipal governments and their employees under § 1983 for constitutional violations); *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (allowing plaintiffs to bring civil suits against federal government employees for certain constitutional violations). Plaintiffs may not sue non-state actors under § 1983 unless there is "significant state involvement such that the private defendants are essentially agents for the government." *Thor v. Crawford*, 2023 WL 8192526, at *2 (C.D. Cal. Oct. 19, 2023) (citing *Lopez v. Dep't of Health Servs.*, 939 F.2d 881 (9th Cir. 1991). They

may similarly not bring such a suit under *Bivens*. *See Morse v. N. Coast Opportunities, Inc.*, 118 F.3d 1338, 1343 (9th Cir. 1997) (noting courts apply "similar tests to determine whether federal action exists to support a *Bivens* claim or to determine whether State action will permit a § 1983 cause of action.")

The record does not show sufficient state involvement to prevail under § 1983 or *Bivens* against the Defendants. Defendants are a private organization and its employees that conduct healthcare and hospice services in Washington State. (Dkt. No. 74 at 1.) Plaintiff asserts "that a significant portion of Harbors' revenue—between 50% to 90—originates from Medicare, indicating potential state action involvement." (Dkt. No. 77 at 12.) Even if the Court did consider Plaintiff's unsworn assertions, courts have routinely found no state action "when a private, non-profit hospital's 'state links consist merely of federal funds under the . . . Medicare program[s], and exemption from state and federal taxes.'" *Probst v. Adams County Sheriff Dept.*, 2021 WL 1554064, at *3 (D. Idaho, April 19, 2021) (quoting *Chudacoff v. University Medical Center of Southern Nevada*, 649 F.3d 1142 (9th Cir. 2011)). Plaintiff also argues that because Defendants' "conduct was in response to Governor Inslee's Proclamation[, this] effectively acknowledges their role as State-Actors." (Dkt. No. 77 at 12.) However, it does not follow that conducting business in accordance with a state statute, law, regulation or proclamation converts a private business into a state-actor. Were this the case, any private entity or individual complying with a state law in operating a business would always be deemed a state-actor. Thus, the record is insufficient to show Defendants are state actors and so Plaintiff's claims under the federal constitution fail as a matter of law.

Plaintiff additionally argues in her opposition that "the discovery process should determine the Defendants' potential status as de facto state agents[.]" Federal Rule of Civil

ORDER ON MOTION FOR SUMMARY JUDGMENT (DKT. NO. 72) - 8

1  Procedure 56 states that a court may "allow time to obtain affidavits or declarations or to take
2  discovery" if the nonmoving party "shows by affidavit or declaration that, for specified reasons,
3  it cannot present facts essential to justify its opposition[.]" Fed. R. Civ. P. 56(d)(2).  A party
4  seeking Rule 56(d) relief bears the burden of demonstrating that "(1) it has set forth in affidavit
5  [or declaration] form the specific facts it hopes to elicit from further discovery; (2) the facts
6  sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Fam.*
7  *Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008)
8  (citing *State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772,
9  779 (9th Cir. 1998)); *see also Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1100 (9th
10 Cir. 2006) ("A party requesting a continuance pursuant to Rule 56([d]) must identify by affidavit
11 [or declaration] the specific facts that further discovery would reveal, and explain why those
12 facts would preclude summary judgment.")  Plaintiff here puts forth no affidavit or declaration.
13 Even if her request for additional discovery were in an affidavit, she identifies no specific facts
14 she hopes to find through discovery.  Thus, the Court declines to delay ruling on the issue for
15 additional discovery.
16     Moreover, any claims Plaintiff may have under the Washington State Constitution fail as
17 "[t]here is no private right of action under the Washington constitution." *Verdier v. Sample*,
18 2022 WL 3597444, at *2 (W.D. Wash. Aug. 23, 2022) (citing *Blinka v. Wash. State Bar Ass'n*,
19 109 36 P.3d 1094 (Wash. Ct. App. 2001)).
20     As the record stands, there are no facts showing Defendants are anything but private
21 actors immune from federal constitutional claims and Plaintiff is precluded as a matter of law
22 from bringing claims under the Washington constitution.  Accordingly, the Court finds Plaintiff's
23 constitutional claims are improper and GRANTS summary judgment as to the constitutional
24

claims.

**C. Breach of Contract**

Under Washington law, the elements of a breach of contract claim are "(1) a contract that imposed a duty, (2) breach of that duty, (3) an economic loss as a result of that breach." *Myers v. State*, 218 P.3d 241, 243 (Wash. Ct. App. 2009).

Defendants argue Plaintiff's breach of contract claim fails as a matter of law because she "does not allege she had an employment contract with [Harbors], nor could she, as none existed." (Dkt. No. 72 at 16.) Plaintiff responds that her job description, which she signed on December 14, 2015, "constitutes a legally binding contract." (Dkt. No. 77 at 21.)

The Court does not find sufficient evidence in the record to show a jury could reasonably construe the job description as a contract, or that a breach of contract occurred. The 2015 job description plainly indicates it is "not intended and do[es] not create [an] employment contract[]." (Dkt. No. 74-1 at 5.) It states instead that Harbors "maintains its status as an at-will employer." (*Id*.) Moreover, the job descriptions provide no salary/compensation information, start or end date, or other pertinent contractual employment information. (*See generally* Dkt. Nos. 74-1; 74-2.) Even if the Court did find there was sufficient evidence to show a possible contract, there is not sufficient evidence to show a breach of contract occurred. The job descriptions state that "[i]n no instance . . . should the duties, responsibilities, and requirements delineated be interpreted as all inclusive. Additional functions and requirements may be assigned as deemed appropriate." (*Id*.) The testing and vaccine policies constitute a job requirement change. While Plaintiff argues the job description "did not state any health or medical-related prerequisites for fulfilling the role[,]" the description does appear to include certain health-related requirements of the job, including speech, visual, and strength

requirements.  (Dkt. No. 74-1 at 4; Dkt. No. 74-2 at 4.)  Plaintiff puts forth no facts, even unsworn, that rebut the plain language of the job description.

Thus, the Court finds Plaintiff's breach of contract claim fails as a matter of law and GRANTS summary judgment as to the breach of contract claim.

**D. Title VII Violations**

a. <u>Individual Defendants</u>

"Title VII may only be brought against employers, not co-employees." *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir. 1993); *see also Ortez v. Washington Cnty., State of Or.*, 88 F.3d 804, 808 (9th Cir. 1996) (affirming dismissal "because employees cannot be held liable in their individual capacities under Title VII.").

Plaintiff brings her Title VII claim against five individual defendants: Defendants Dhooghe, Greenawalt, Erickson, Minzey, and Stephens ("Individual Defendants").  (Dkt. No. 59.)  Plaintiff argues that because the Individual Defendants "are responsible for direct decisions and actions that give rise to the claims of failure to accommodate and discriminatory termination, then it is both reasonable and necessary to hold those individuals accountable under the auspices of Title VII."  (Dkt. No. 77 at 24.)

The Court is unconvinced.  The Ninth Circuit is clear plaintiffs may not bring suit against individual defendants under Title VII.  *See Ortez*, 88 F.3d at 808.  Accordingly, the Court GRANTS summary judgment as to the Title VII claims against the Individual Defendants.

b. <u>Defendant Harbors</u>

Under Title VII, it is unlawful for an employer "to discharge any individual . . . because of such individual's . . . religion." 42 U.S.C. § 2000e–2(a)(1).

Plaintiff alleges Defendant Harbors violated her rights under Title VII "when they denied

Plaintiff's oral request for accommodation and denied Plaintiff access to the Harbors Specific Form by email [and] coerc[ed] Plaintiff's involuntary resignation under duress." (Dkt. No. 59 at 10–11.)

1. Denial of Request for Accommodation and Access to Accommodation Form by Email

An employee who claims religious discrimination based on an employer's failure to accommodate their religious beliefs or practices bears the initial burden of setting forth a prima facie case of religious discrimination. *Berry v. Dep't of Soc. Servs.*, 447 F.3d 642, 655 (9th Cir. 2006). To establish this prima facie case, the employee must demonstrate "that (1) she had a bona fide religious belief, the practice of which conflicted with an employment duty; (2) she informed her employer of the belief and conflict; and (3) the employer threatened her or subjected her to discriminatory treatment, including discharge, because of her inability to fulfill the job requirements." *Tiano v. Dillard Dept. Stores, Inc.*, 139 F.3d 679, 681 (9th Cir. 1998) (citation omitted); *see also Slater v. Douglas Cnty.*, 743 F. Supp. 2d 1188, 1191 (D. Or. 2010) (citations omitted). If the employee succeeds in establishing a prima facie case, the burden shifts to the employer to prove that it either "initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Tiano*, 139 F.3d at 681 (citations omitted).

Defendants put forth an affidavit wherein Defendant Dhooghe describes the phone call at issue, declaring Plaintiff did not "mention[] anything about her religious beliefs, request[] a religious accommodation, or otherwise oppos[e] [Harbor's] vaccine policy on religious grounds." (Dkt. No. 74 at 2.) Defendant Dhooghe also declares Plaintiff did not discuss "being Christian, that the vaccination and PCR test were against her religious beliefs, that she was

requesting [Harbors] provide her with an accommodation, that [Harbors] accommodate her work as they already had for the past 18 months, or that [Defendant Dhooghe] send her a religious exemption form via email." (*Id*.)

As discussed above, the Court is unable to consider the unsworn arguments in Plaintiff's opposition as factual evidence on the record. The Defendants' account being the only evidence on the record, there appears to be no material dispute as to whether Plaintiff asserted her religious beliefs as reason for not wishing to receive the COVID-19 vaccine.

Even had Plaintiff put forth an affidavit swearing under penalty of perjury, the Court is unconvinced she would have prevailed on the failure to accommodate claim. Plaintiff argues in her opposition that Defendants "denied and ignored all of Plaintiff's requests to be accommodated[.]" (Dkt. No. 77 at 26.) Plaintiff asserts that "[e]very time [she] stated 'No,' Plaintiff put Defendants on notice," of her religious reasons for not wanting to take the vaccine or conduct a nasal swab test. (*Id*. at 25.) However, simply refusing a vaccine or a nasal swab test did not give her employer notice of the religious motivation behind her refusal or that she was seeking accommodation. Moreover, nowhere in her opposition does Plaintiff assert she asked for or filled out the religious accommodation form, or that her religious accommodation request was denied. (*See generally id*.) Plaintiff argues that Defendants "made it necessary for employees to proactively request the Harbors Specific Religious Accommodation and Exemption Form [and that] this was the only form that Defendants were unwilling to distribute via email" during Plaintiff's employment. (*Id*. at 26.) Having to request a religious accommodation form from an employer, especially when the employer has made it clear the forms are available, is not a refusal to accommodate.

Thus, Plaintiff having put forth no facts on the record, and having alleged unsworn facts

which do not support a lack of accommodation, the Court finds no genuine dispute of material fact and GRANTS summary judgment as to the Title VII failure to accommodate claim.

### 2. Constructive Discharge

For purposes of Title VII, "[a] constructive discharge occurs when a person quits his job under circumstances in which a reasonable person would feel that the conditions of employment have become intolerable." *Simpson v. DeJoy*, 641 F.Supp.3d 772, 794 (D. Ariz. 2022) (citing *Lawson v. Washington*, 296 F.3d 799, 805 (9th Cir. 2002) (emphasis omitted)). Stated differently, "constructive discharge occurs when the working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer." *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000) (internal quotations omitted). Thus, a plaintiff claiming constructive discharge "must show some aggravating factors, such as a continuous pattern of discriminatory treatment." *Sanchez v. City of Santa Ana*, 915 F.2d 424, 431 (9th Cir. 1990) (internal quotations omitted). While an employee "need not demonstrate that his employer intended to force him to resign," he must demonstrate the conditions of employment "were objectively intolerable." *Lawson*, 296 F.3d at 805.

Here, Plaintiff's constructive discharge claim fails as a matter of law because there is insufficient evidence of discriminatory treatment from which a jury could conclude her work environment was abusive. Defendants put forth facts showing Plaintiff quit only three days after her initial complaint about the vaccine and testing policies. (Dkt. No. 74-2 at 3–4; Dkt. No. 74-5 at 2) (email exhibit showing initial complaint dated August 30, 2021 and email resignation letter dated September 2, 2021). During this three-day period, Defendants responded to Plaintiff's

email about the COVID-19 policies with assurances that her "concerns will be reviewed." (Dkt. No. 74-3 at 4; *see also id*. at 2.) Defendants also held a phone call with Plaintiff to address her concerns. (Dkt. No. 74 at 2). In her affidavit, Defendant Dhooghe states Plaintiff "never once mentioned anything about her religious beliefs, request[ed] a religious accommodation, or otherwise oppos[ed] [Harbors'] vaccine policy on religious grounds." (*Id*.)

Plaintiff fails to show how her working conditions deteriorated in those three days. Plaintiff neither puts forth facts on the record, nor even alleges unsworn facts showing how her working conditions deteriorated. Indeed, the email dialogue between Plaintiff and Defendants indicates Plaintiff did not even attend work in person in those interim days. (*See* Dkt. No. 74-3 at 4) ("[W]e are expecting your return on Tuesday[, September 7, 2021] after Labor Day. We will need you to get tested prior to returning.")

Even if Plaintiff's working conditions did deteriorate in those three days, the Court is unpersuaded this was "as a result of discrimination." *Brooks*, 229 F.3d at 930. As shown by the facts on the record, Plaintiff made no mention of religious reasons for her vaccine or testing refusal. (Dkt. No. 74 at 2.) Even in Plaintiff's unsworn opposition, she does not allege any fact showing she notified Defendants of her religious motivations for refusing the vaccine, indicating she simply said "No" multiple times. (Dkt. No. 77 at 25.) While the Court believes there is sufficient evidence on the record that Plaintiff did not agree with the testing and vaccine policies, there is not sufficient—or any—evidence to show this opposition was based in religious belief. Because Defendants were not aware of Plaintiff's religious motivations, there is no possibility of religious discrimination.[4]

---

[4] Plaintiff asserts further discovery is needed to show she was treated differently on the basis of her religion. (Dkt. No. 77 at 26) (seeking to show Defendants treated others without her purported religious beliefs differently). However, because she does not properly request this additional

All told, no reasonable juror could find discriminatory treatment caused Plaintiff's working conditions to deteriorate. Thus, the Court GRANTS summary judgment as to the Title VII constructive discharge claim.

## IV.   CONCLUSION

Having reviewed the motion, the opposition, and the remainder of the record, the Court GRANTS Defendants' motion for summary judgment (Dkt. No. 72). Accordingly, Plaintiff's case is DISMISSED and her pending motions to exclude Defendants' affirmative defenses (Dkt. Nos. 75, 86) are DENIED as MOOT. Likewise, the Parties' stipulated motion to continue the trial date (Dkt. No. 92) is DENIED as MOOT and all hearings in this matter are STRICKEN.

Dated this 23rd day of May 2024.

David G. Estudillo
United States District Judge

---

discovery in an affidavit per Federal Rule of Civil Procedure 56(d), and because the Court held *supra* that no reasonable juror could find that Plaintiff informed Defendants her religion was a reason for refusing the vaccine or testing, the Court declines to allow additional discovery on the matter.